**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**



**SHIRLEY A. WESTVEER,
Administrator of the Estate of
Arthur E. Westveer, Jr.,
      Plaintiff**

v.                                                                                           Civil Action No. 2:11cv255

**GARRISON PROPERTY & CASUALTY
INSURANCE COMPANY,
      Defendant.**

## OPINION AND ORDER

This is a dispute involving a claim for underinsured motorist coverage. Shirley A. Westveer, Administrator of the Estate of Arthur E. Westveer, Jr., ("Plaintiff") is a resident and citizen of the Commonwealth of Virginia. At all relevant and material times Plaintiff resided in Spotsylvania County, Virginia. Garrison Property and Casualty Insurance Company ("Defendant") was and is a stock insurance corporation organized in and existing under the laws of Texas, with its principal place of business in San Antonio, Texas. Because there is complete diversity between the parties and the amount in controversy exceeds $75,000, subject matter jurisdiction in this Court is proper under 28 U.S.C. § 1332. This matter came before the Court on May 9, 2011, on Plaintiff's action for a declaratory judgment. This matter is presently before the Court on Plaintiff's motion for summary judgment, filed on August 17, 2011, and Defendant's cross-motion for summary judgment, filed November 14, 2011. For the reasons stated herein, Plaintiff's motion is hereby **DENIED** and Defendant's motion is hereby **GRANTED**.

## I.     FACTUAL AND PROCEDURAL HISTORY

The facts in this case are undisputed. On June 18, 2010, Arthur A. Westveer, Jr. was involved in an automobile accident wherein another driver ran a red light and struck the Westveer vehicle on the driver's side door. Mr. Westveer died in the emergency room. (Pl.'s Compl. Decl. J. 2.) His wife, Shirley A. Westveer, is the Administrator of his estate and the instigator of this Declaratory Judgment action. The at-fault driver was insured under an Allstate liability policy which had a per person bodily injury limit of $100,000. Allstate has agreed to pay the full value of this policy. Defendant was insured by a policy ("the Policy") through Defendant Garrison which provided liability coverage in connection with three vehicles. The Policy contained a schedule of coverage, which listed as the limit of liability for all three vehicles with respect to uninsured motorist bodily injury coverage as "$100,000 each person." Additionally, the Policy contained an "anti-stacking" clause, which provided as follows:

> The limit of Bodily Injury Liability shown in the Declarations for each person for Uninsured Motorist Coverage is **our** maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one accident. Subject to this limit for each person, the limit of Bodily Injury Liability shown in the Declarations for each accident for Uninsured Motorist Coverage is **our** maximum limit of liability for all damages for **bodily injury** resulting from any one accident.
>
> The limit of Property Damage Liability shown in the Declarations for each accident for Uninsured Motorists Coverage is **our** maximum limit of liability for all **property damage** resulting from any one accident.
>
> This is the most **we** will pay regardless of the number of:
>   1. Insureds
>   2. Claims made; or
>   3. Vehicles or premiums shown in the Declarations

Following the accident, Defendant Garrison denied coverage on the ground that the limits of liability for UIM coverage under the Westveer Policy was $100,000, the same amount provided by the Allstate policy, and thus that the amounts off-set and relieved Defendant of liability to tender the value of the Policy. On May 9, 2011, Plaintiff filed a Complaint for Declaratory Judgment in this Court, to which Defendant responded on May 31, 2011. On August 17, 2011, Plaintiff filed a motion for summary judgment, to which Defendant replied on September 9, 2011. On November 14, 2011, Defendant filed a cross-motion for summary judgment, to which Plaintiff replied on November 21, 2011. On November 29, 2011, the Court entered a Certification Order requesting that the Supreme Court of Virginia answer a certified question of law in this case. On January 13, 2012, the Supreme Court of Virginia issued a ruling in which it declined to accept the certified question of law. The motions have been fully briefed, the Court has heard oral argument, and the matter is now ripe for decision.

## II.  CHOICE OF LAW

A federal court sitting in diversity must apply the substantive law of the state in which it sits, including that state's choice of law rules. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79, 82 (1938). Under Virginia law, a court's interpretation of an insurance contract is governed by the law of the place where the contract was delivered. Metcalfe Bros., Inc. v. American Mut. Liability Ins. Co., 484 F. Supp. 826 (W.D. Va. 1980) (citing Woodson v. Celina Mut. Ins. Co., 211 Va. 423, 426 (1970)). The Garrison Policy is a Virginia policy which was issued to a resident and citizen of Virginia. Interpretation of the Policy is thus governed by Virginia law.

## III. LEGAL STANDARD

In reviewing a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court construes all facts and inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007) (citing United States v. Diebold, Inc., 369 U.S. 564, 655 (1962); Saucier v. Katz, 533 U.S. 194, 201 (2001)). The Court will grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Id. at 323–24.

The moving party bears the initial burden of showing "the absence of an essential element of the nonmoving party's case and that it is entitled to judgment as a matter of law." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004). Once the moving party satisfies this burden, the nonmoving party then must recite specific facts showing that there is a genuine dispute of fact which merits a trial. Id. (citing Matsuhita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Summary judgment "will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." Honor, 383 F.3d at 185.

## IV. ANALYSIS

This case turns on the interpretation of language found in the insurance policy issued by Defendant. Contract interpretation is a question of law, and is thus appropriate for resolution on

summary judgment. Virginia Farm Bureau Mut. Ins. Co. v. Williams, 278 Va. 75, 80 (2009); City of Chesapeake v. States Self-Insurers Risk Retention Group, Inc., 271 Va. 574, 578 (2006). This is particularly true where, as here, the facts giving rise to the insurance claim are not in dispute.

"Courts interpret insurance policies, like other contracts, by determining the parties' intent from the words they have used in the document." Virginia Farm Bureau, 278 Va. at 80. Provisions of an insurance contract should not be viewed in isolation. Rather, all provisions "must be considered and construed together, and any internal conflicts between provisions must be harmonized, if reasonably possible, to effectuate the parties' intent." Id. Where a policy term is unambiguous, courts apply its plain meaning as written. Id. at 81. However, where disputed policy language can be read as having more than one meaning, courts construe such language in favor of coverage and against the insurer. Id. Therefore, when an insurer wishes to disclaim coverage, the insurer must rely on language that is "reasonable, clear, and unambiguous." Id. Moreover, "[b]ecause insurance policies usually are drafted by insurers, [courts] construe ambiguous policy language purporting to exclude certain occurrences from coverage most strongly against the insurer." Id. (citing Seals v. Erie Ins. Exch., 277 Va. 558, 562 (2009)).

It is well-established in Virginia that "the stacking of UM[UIM] coverage will be permitted unless clear and unambiguous language exists on the face of the policy to prevent such multiple coverage." Goodville Mut. Cas. Co. v. Borror, 221 Va. 967, 970 (2009). Plaintiff contends that the Virginia Supreme Court's recent decision in Virginia Farm Bureau Mut. Ins. Co. v. Williams, 278 Va. 75 (2009) demonstrates that there is ambiguity in the Policy despite the anti-stacking clause recited abovel; and therefore, stacking is permissible. In Virginia Farm Bureau, the policy at issue contained an unambiguous anti-stacking provision. However, unlike

in Goodville, which stated the limits of liability for "each person" in a schedule directly within the UIM section, the policy at issue in Virginia Farm Bureau referred the reader to the declarations page of the policy. On this declarations page, there were three references to the term "each person," two of which stated a limit of liability for "each person" in the amount of $300,000, while the third stated a limit of liability for "each person" in the amount of $250,000. Id. Therefore, the court concluded that stacking was allowed despite the clear anti-stacking clause because the language contained in the declarations page left "unresolved the question whether all three separate limits for 'each person' apply and, if not, which of the single separate limits for 'each person' is applicable." Id.

In its cross-motion for summary judgment, Defendant relies on the Supreme Court of Virginia's opinion in Goodville Mut. Cas. Co. v. Borror, 221 Va. 970 (2009) to argue that the language in the Policy unambiguously prevents intrapolicy stacking of UIM coverage. In Goodville, the Virginia Supreme Court found that the anti-stacking clause there at issue[1], which contained language nearly identical to that of the policy now under review, was "clear and unambiguous and require[d] the construction that stacking is not permissible." 221 Va. 967, 970-71. Courts have frequently and consistently endorsed the holding in Goodville. See Allstate Ins. Co. v. McElarath, No. 01:10-cv-788, 2011 WL 2457869, *3 (E.D. Va. 2011) ("The clear terms of the McElrath policy show that a single $100,000 per person limit applies for UIM coverage, regardless of the number of vehicles insured. The anti-stacking language found in

---

[1] In a section entitled "PROTECTION AGAINTS UNINSURED MOTORISTS INSURANCE," and under the heading "LIMITS OF LIABILITY," the policy at issue in Goodville stated: "Regardless of the number of . . . motor vehicles to which this insurance applies, (a) the limit of liability for bodily injury stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respective "each person", the limit of liability stated in the schedule as applicable to "each accident" is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident." Goodville, 221 Va. at 970.

these policies is very similar, if not identical, to the anti-stacking language found in the insurance policy under review in Goodville"); Trigo Travelers Commercial Ins. Co., 755 F.Supp.2d 749 ("The policy at issue in the instant action contains anti-stacking language that is materially identical to the language employed in the policy in Borror); Hostettler v. Auto-Owners Ins. Co., 744 F. Supp.2d 543 (rejecting intrapolicy stacking where the policy "used anti-stacking language found to be unambiguous in Borror").

In fact, Plaintiff does not contest that the Policy's anti-stacking clause would pass muster under Goodville. (Pl.'s Br. Supp. Mot. Summ. J. 4.) Nonetheless, Plaintiff attempts to get around this clear anti-stacking clause in the Policy by parsing language found elsewhere in the Policy. First, Plaintiff focuses on the fact that in the section describing uninsured motorist coverage, the Garrison Policy uses the phrase "the *sum of* the limits of liability under all liability bonds or policies." Plaintiff contends that such language clearly contemplates a definition of "underinsured" which is dependent on stacking all of the UIM coverages shown on the Declarations page.

Second, Plaintiff notes that the language used to describe the amount of liability coverage under the Allstate Policy is different from that used to describe the amount of liability coverage under the Garrison Policy. Specifically, Plaintiff emphasizes that the Policy uses the phrase "the sum of . . . the limits of liability under all liability bonds or policies . . . that is *available for payment*" to describe the value of the Allstate Policy and the phrase "the sum of the limits of liability applicable to the Insured for Uninsured Motorist Coverage" to describe the Garrison Policy. Plaintiff argues that the phrase "applicable to the Insured," used to describe the Garrison Policy, invites a broader inquiry than the phrase "available for payment," used to describe the Allstate Policy. Therefore, Plaintiff contends, although the amount "available for payment"

under the Allstate Policy is limited to $100,000, the amount "applicable to the Insured" under the Garrison Policy is $1,350,000 because the Westveers insured three vehicles under the Policy, and the Policy provided for limits of $100,000 + $300,000 + $50,000 for each vehicle. (Pl.'s Br. Supp. Mot. Summ. J. 9.)

In so arguing, Plaintiff relies heavily on the language contained in Virginia Farm Bureau to argue that the mere presence of an anti-stacking provision in a policy limiting liability – even one which on its face is unambiguous – does not prevent stacking where language elsewhere in the Policy creates some ambiguity. Id. at 82-83. However, Virginia Farm Bureau "simply stands for the proposition 'that an otherwise valid anti-stacking clause is rendered ambiguous where . . . application of the anti-stacking clause leads to an unclear result.'" Davis v. Nationwide Mutual Ins. Co., No. CL10-555, 2010 WL 7765114, *3 (Va. Cir. Ct. Aug. 31, 2010) (citing Lloyd v. Travelers Property Casualty Ins. Co., 727 F.Supp.2d 452, 460 (E.D.Va. July 22, 2010)). With respect to the Garrison Policy, application of the anti-stacking clause does not lead to an unclear result.

Therefore, Virginia Farm Bureau is distinguishable because the declarations page contained inconsistent values with respect to the limits of liability for "each person." Davis, 2010 WL 7765114 at *3; Joyce v. Nationwide, No. CL09-833 at *1 (Va. Cir. Ct. June 25, 2010); Patterson v. Nationwide, No. CL09-2805 at *2 (Va Cir. Ct. Apr. 26, 2010). Thus, application of the anti-stacking clause at issue in Virginia Farm Bureau would direct the reader to two different values – one of $250,000 for "each person" and one of $300,000 for "each person." It was precisely because a reader could not have known which value was applicable that the court concluded that there was ambiguity and construed the language against the insurer.

In this case, by contrast, the phrase "each person" has a consistent value of $100,000 under the coverages listed for each of Plaintiff's three vehicles. Moreover, the language is clear that "[t]he limit of Bodily Injury Liability shown in the Declarations for each person for Uninsured Motorist Coverage is our maximum limit of liability for all damages . . . This is the most we will pay regardless of the number of . . . Vehicles or premiums shown in the Declarations." The limit as shown in the Declarations is $100,000, no matter which entry for "each person" is examined upon review. The language contained in the Garrison Policy to which Plaintiff points as creating ambiguity, when read in conjuction with the remainder of the Policy, is simply not sufficient to cause the Court to read the intent of the parties – which clearly was to prohibit stacking – out of the contract. In sum, the ambiguity which existed in <u>Virginia Farm Bureau</u> is simply not present in this case, and applying the anti-stacking provision in this case produces no uncertainty.

Therefore, Plaintiff's motion for summary judgment is hereby **DENIED** and Defendant's cross-motion for summary judgment is hereby **GRANTED**. Accordingly, because Plaintiff is not entitled to stack the UIM coverages present in the Declarations section of the Policy, UIM coverage is limited to $100,000.

The Clerk of Court is **DIRECTED** to transmit a copy of this Order to all counsel of record.

**IT IS SO ORDERED**

Norfolk, Virginia

January ___, 2012

/s/ Robert G. Doumar
Senior United States District Judge